UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID PAUL BAILLARGEON and | * | |
| LORI ANN BAILLARGEON, | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 19-30135-MGM |
| CSX TRANSPORTATION CORP. | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION
(Dkt. No. 29)

May 29, 2020

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Presently before the court is a Motion for Preliminary Injunction (Dkt. No. 29), filed by

David Paul Baillargeon and Lori Ann Baillargeon ("Plaintiffs"), who are proceeding *pro se*. Plaintiffs

request that the court order CSX Transportation Corp. ("Defendant") to (1) remove barriers it

placed in front of a road Plaintiffs have used for thirty years for accessing their residence, fuel

delivery, and emergency services; and (2) either replace a certain crossing over the railroad track

adjacent to Plaintiffs' property or improve the blocked road by lowering its grade and widening it.

For the following reasons, the court will grant Plaintiffs' motion, in part, by ordering the removal of

the barriers and enjoining Defendant from interfering with Plaintiffs' access to the road in question

for purposes of Plaintiffs' essential residential usage, fuel delivery, and emergency services access.

## II. Background[1]

Plaintiffs live at 3 Thomas Road in Huntington, Massachusetts and own many acres of contiguous land in a parcel sometimes referred to as "Little Canada". (Dkt. No. 1, Compl. ¶ 1A, Exs. A, H, K, and L.) Plaintiffs have used this land since at least the early 1980s for various business purposes, including gravel hauling. (Compl., Exs. H and K.)

In prior litigation, the Massachusetts Court of Appeals in 1986 held that Plaintiffs had obtained a private prescriptive easement over a northerly access to "Old Wood Road," but that they could not use this northern access "for traffic generated . . . by gravel removal or similar purpose resulting in the frequent coming and going of vehicles." (Compl., Ex. H.) *Carmel v. Baillargeon*, 487 N.E.2d 867, 870-71 (Mass. App. Ct. 1986).[2] As the Massachusetts Appeals Court noted, the southern portion of Old Wood Road, which at the time crossed railroad tracks twice, "first becomes [from north to south] Thomas Road and then Carrington Road." *Id.* at 869; *see also id.* at 871 (sketch of Old Wood Road attached as an appendix to appeals court opinion). In or around 1986,

[1] The facts derive from the evidence submitted by the parties and the "well-pleaded allegations" in Plaintiffs' complaint (which are largely uncontroverted). *See Elrod v. Burns*, 427 U.S. 347, 350 n. 1 (1976) ("For purposes of our review, all of the well-pleaded allegations of respondents' complaint and uncontroverted affidavits filed in support of the motion for a preliminary injunction are taken as true."); *see also Asseo v. Pan American Grain Co., Inc.*, 805 F.2d 23, 26 (1st Cir. 1986) (explaining that courts may consider inadmissible evidence, including hearsay, when ruling on a motion for preliminary injunction, with the "dispositive question" being "whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding"); *see also Howe v. U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr. Series 2016-CTT*, --- F. Supp. 3d ----, 2020 WL 730890, at *2 (D. Mass. Feb. 13, 2020). Moreover, because Plaintiffs are *pro se*, their "filings are held to a less stringent procedural standard than others." *Nunnally v. MacCausland*, 996 F.2d 1, 6 (1st Cir. 1993). The court additionally notes that it had originally scheduled an evidentiary hearing on Plaintiffs' preliminary injunction motion, but it granted Defendant's emergency motion to continue the hearing and subsequently held a non-evidentiary, phone hearing, in light of the current health crisis. (Dkt. Nos. 34, 39-41.) Given these circumstances, the court will not penalize Plaintiffs for the lack of an evidentiary hearing and, in any event, finds an evidentiary hearing is not required for resolution of the preliminary injunction motion. *See Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 223 (1st Cir. 2003); *Campbell Soup Co. v. Giles*, 47 F.3d 467, 470-72 (1st Cir. 1995). The parties, of course, may seek to modify this order due to changed circumstances or in light of further factual development and, if so, the court would again consider the necessity of holding an evidentiary hearing.

[2] This northern access route arose after the prior northern route became "a dead end" at the connection of Old Wood Road and Montgomery Road when the location and grade of Montgomery Road were altered by Hampshire County in 1960. *Id.* at 868-69. Notably, before addressing the status of the newer northern access to Old Wood Road (over which Plaintiffs have a limited prescriptive easement), the Massachusetts Appeals Court reversed the trial court and held that Old Wood Road was a "public way" which had not been discontinued by implication, as the Town of Huntington never voted to discontinue it. *Id.* at 869-70.

Defendant's predecessor, Conrail, moved the southern portion of Old Wood Road from the west side of the railroad tracks to the east side, eliminating the need to cross the tracks, and removed the two crossings. (Compl. at 6; Ex. D-2 at 1; Ex. L.)[3] Plaintiffs have continuously used this southern portion of Old Wood Road/Thomas Road to access their property for residential and business (namely, gravel hauling) purposes both before and after the road was relocated to the east side of the tracks. (Compl. Ex. D-2 at 1-2, Ex. L-4.)[4]

Plaintiffs' use of this southern portion of the road continued unabated until July of 2017, when Plaintiffs received a letter from Defendant (through its agent Jeff Everett) disputing their use of the road. (Compl., Exs. D-2 and D-3; Dkt. No. 36-1.) Plaintiffs assert they reached an agreement with Mr. Everett that Plaintiffs would lower the grade of the road and widen it to avoid traveling closer than 25 feet from the center of the railroad tracks. (Compl., Ex. D-2.) Plaintiffs further assert they arranged for John Rossatti (who had removed gravel from Plaintiff's property since the 1980s) to complete this work and that Mr. Rosastti "spoke with Jeff Everett and both verbally agreed to start the work on the road." (*Id.* at 2.) Nevertheless, according to Plaintiffs, on August 15, 2017 (on Mr. Rossatti's second day working on the road), a Massachusetts State Police officer ordered Mr. Rossatti's employee to stop working because he was trespassing, and Plaintiffs received No Trespass Orders for using this portion of the road. (*Id.*; Ex. A.)[5] Defendant then blocked Plaintiffs' access to

---

[3] These removed crossings historically presented safety issues, as reflected in a March 6, 1986 newspaper article reporting a collision between a train and a van at a Thomas Road crossing. (Compl. Ex. L-1.)

[4] At the hearing, Defendant's counsel claimed to dispute that Plaintiffs have used this portion of the road for as long as they allege, but Defendant has provided no evidence or specific argument supporting this assertion. In contrast, Plaintiffs consistently allege in their complaint and support with various exhibits their claim of such continuous and open use of the road for thirty years.

[5] Defendant's counsel acknowledged at the hearing that there were discussions between Plaintiffs and Defendant regarding an agreement "wherein [Plaintiffs] could access their property via this road on CSX property and we'd require some sort of a lease arrangement and that needed to be documented in a legal fashion." (Dkt. No. 57 at 12.) However, Defendant's counsel asserted, it then came to Defendant's attention that Plaintiffs were "improving or working on that road all the way up to the ballast stone off the track ties and were in fact raking ballast stone off the track, off the track ties, and doing work right next to an operating right-of-way," which discovery resulted in the placement of the jersey barriers. (*Id.* at 12-13.)

this portion of the road by placing six concrete jersey barriers—three on the southern end of this portion of the road and three to the north near the boundary of Plaintiffs' property, approximately 600-700 yards away. (Compl., Exs. B, D-2 at 2; Dkt. No. 36 ¶ 10.)

Although Plaintiffs have some access to their property through the northern portion of Old Wood Road, in conjunction with the private prescriptive easement recognized by the Massachusetts Appeals Court in 1986, this portion of the road has not been maintained and cannot accommodate fuel delivery or regular emergency service vehicles at any time of the year. (Compl. at ¶ 1; Exs. C, D-1, D-2; *see also* Dkt. No. 36-2 to 36-14.) As a result, Plaintiffs' fuel delivery company, Wheeler Oil Co., Inc., sent them an August 25, 2017 letter stating it can "no longer deliver oil/service your furnace at 3 Thomas Rd, Huntington MA. due [to] circumstances and situations with the Rail Road" and it is unable to access the home through the northern portion of Old Wood Road. (Compl., Ex. C-3.) Similarly, the Hilltown Community Ambulance Association, Inc., sent Plaintiffs an August 30, 2017 letter explaining that its primary ambulance cannot reach their home through the northern access and that "in the event of a medical emergency we have other options we could utilize in order to extricate a patient from your property, but they will involve additional resources and time." (Compl., Ex. C-1.) In addition, the Huntington Fire Department sent Plaintiffs a letter acknowledging the lack of access for emergency vehicles and the inability of large fire trucks to reach the property through the northern route, while also stating "the Fire Dept. will use any and every means to get to you in an emergency" pending a resolution of the issue with Defendant. (Compl., Ex. C-2.)[6]

---

[6] Plaintiffs also assert the northern portion of Old Wood Road is extremely difficult, if not impossible, to traverse during certain times of the year (namely, winter and early spring), even with a 4-wheel-drive vehicle, as it is not maintained by the Town of Huntington. (Compl. ¶¶ 1-2; Ex. D-2; Dkt. No. 57 at 8-9.) Defendant contends that this northern access is "passable by car and truck" and attached a number of photographs of the dirt road taken by Mr. Everett on August 17, 2017. (Dkt. No. 36 ¶ 8, Exs. B-N.) Plaintiffs, it should be noted, asserted at the hearing that in August this portion of Old Wood Road is in its best condition. (Dkt. No. 57 at 9.)

Shortly after the placement of the jersey barriers, Plaintiffs began appealing to their local and state representatives for assistance. On September 13, 2017, Plaintiffs met with the Huntington Board of Selectmen, which indicated it could not help Plaintiffs. (Compl., Ex. D-2 at 3.) On December 1, 2017, Massachusetts State Senator Adam Hinds and Massachusetts State Representative Stephen Kulik wrote a letter to Defendant on behalf of Plaintiffs, highlighting the safety concerns regarding access for emergency vehicles and urging Defendant to resolve the situation with Plaintiffs. (Compl., Ex. D-1.) Plaintiffs also allege in their complaint, and asserted at the hearing, that they have "made every effort to convince [Defendant] through their agents, police and the Surface Transportation Board that they were and are in error blocking" the road (Comp. ¶ 2; Dkt. No. 57 at 18-19.) In addition, Plaintiffs explained at the hearing that they spent a year researching historical deeds and eventually found an 1840 deed which they claim provides Plaintiffs with expressly reserved rights-of-way. (Dkt. No. 57 at 19; *see also* Compl. ¶ 2; Dkt. No. 29 at 1; Dkt. No. 42 at 2-3.) Defendant, according to Plaintiffs, still could not be convinced to remove the jersey barriers, despite this evidence. (Dkt. No. 57 at 19; Dkt. No. 42 at 3.)

Plaintiffs assert, and Defendant has not disputed, that since Defendant installed the jersey barriers, Plaintiff Lori Baillargeon "has had two heart attacks," after which David Baillargeon "had to take her to the hospital myself over an[] icy, bumpy, narrow, muddy and unmaintained road," *i.e.*, the northern section of Old Wood Road. (Compl. ¶ 2; Dkt. No. 29 at 1-2; *see also* Dkt. No. 57 at 8.) Plaintiffs also assert that because they cannot obtain fuel delivery, they have had to transport diesel fuel using 5-gallon plastic tubs, paying extra as a result. (Dkt. No. 57 at 21; *see also* Dkt. No. 42 at 1.) In addition, Plaintiffs contend their property is now essentially worthless, they cannot use any of

their various permits (gravel,[7] campground, auction, and fish farm), and their businesses are failing

and they are falling behind on their bills. (Compl. ¶ 3, Ex. K; Dkt. No. 29 at 2.)

Plaintiffs filed this action on October 7, 2019. (Compl.) Their *pro se* complaint does not

include any specific legal claims but, rather, sets forth a factual narrative and requests injunctive

relief (namely, the removal of the barriers) and damages. (*Id.*)[8] On November 27, 2019, Defendant

filed an answer and counterclaim for trespass. (Dkt. No. 17.) On February 7, 2020, the same day as

the scheduling conference held before Magistrate Judge Katherine Robertson, Plaintiffs filed their

motion for preliminary injunction, which Defendant opposed on March 6, 2020. (Dkt. Nos. 29, 30.)

The court, after continuing a March 24, 2020 hearing date, held a hearing on the motion for

preliminary injunction on April 28, 2020. (Dkt. Nos. 40, 56.)

III. STANDARD OF REVIEW

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v.

Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "In each case, courts 'must balance the competing

claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief.'" *Id.* (quoting *Amoco Production Co. v. Village of Gambell, Ak.*, 480 U.S. 531, 542

(1987)). "The purpose of such interim equitable relief is not to conclusively determine the rights of

the parties . . . but to balance the equities as the litigation moves forward." *Trump v. Int'l Refugee

Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (internal citation omitted). As such, "[c]rafting a

preliminary injunction is an exercise of discretion and judgment, often dependent as much on the

equities of a given case as the substance of the legal issues it presents." *Id.*

---

[7] Plaintiffs explained at the hearing that because they obtained their gravel permit through a "grandfather clause," their non-use of the permit for over two years means that it is no longer operative. (Dkt. No. 57 at 17.)

[8] Plaintiffs' complaint invokes diversity jurisdiction, alleging Plaintiffs are citizens of Massachusetts and Defendant is incorporated in Florida and has its principal place of business there as well, and more than $75,000 is in controversy. (Compl. at 3-4.) Defendant admits in its answer that it has its principal place of business in Florida, but pleads that it is incorporated in Virginia. (Dkt. No. 17 at 2.) The court finds, in the absence of any factual challenge from Defendant, that it has subject-matter jurisdiction under 28 U.S.C. § 1332.

In order to obtain such preliminary injunctive relief, a plaintiff normally must demonstrate "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *NuVasive, Inc. v. Day*, 954 F.3d 439, 443 (1st Cir. 2020) (internal quotation marks omitted). The First Circuit has explained that likelihood of success on the merits is "the most important of the four preliminary injunction factors." *Doe v. Trustees of Bos. Coll.*, 942 F.3d 527, 533 (1st Cir. 2019). On the other hand, the First Circuit has also explained that irreparable harm and likelihood of success should be measured on "a sliding scale . . . such that [t]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." *Braintree Labs., Inc. v. Citigroup Glob. Markets Inc.,* 622 F.3d 36, 42–43 (1st Cir. 2010) (internal citations and quotation marks omitted); *see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996) ("[A]n attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."); *Pub. Serv. Co. of New Hampshire v. Patch*, 167 F.3d 15, 26-27 (1st Cir. 1998) ("[W]e have considered whether at least one or more of the claims put forth by PSNH provides fair grounds for further litigation—this lesser standard being defensible in light of the rather powerful showing of irreparable injury made by PSNH." (citing *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977)); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953) ("[I]f . . . the balance of hardships tips decidedly toward plaintiff . . . it will ordinarily be enough [to justify a preliminary injunction] that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."); 11A Wright & Miller, Federal Practice and Procedure § 2948.3.

Defendant argues Plaintiffs face an elevated burden because they seek a "mandatory preliminary injunction, which requires affirmative action by the non-moving party in advance of trial," rather than "a traditional, prohibitory preliminary injunction," which merely seeks to preserve the status quo. *Braintree Labs.*, 622 F.3d at 40-41. The court, however, does not agree. The First Circuit has "explained that the status quo may be determined by looking at 'the last uncontested status which preceded the pending controversy.'" *Id.* at 41 n.5 (quoting *United Steelworkers of Am., ALF-CIO v. Textron, Inc.*, 836 F.2d 6, 10 (1st Cir. 1987)); *see also Rocket Learning, Inc. v. Rivera Sanchez*, 2011 WL 13351430, at *8 (D.P.R. Feb. 12, 2011) ("[S]ince the status quo is determined by looking at 'the last uncontested status which preceded the pending controversy,' plaintiffs' injunction should be viewed as prohibitory—not mandatory—since an annulment would return the parties to the same position they were in just prior to the December pre-enrollment process." (quoting *Textron*, 836 F.2d at 10)); *Cobra North America, LLC v. Cold Cut Systems Svenska AB*, 639 F. Supp. 2d 1217, 1229 (D. Colo. 2008) ("The status quo, then, is not necessarily the positions that the parties occupied at the time litigation began."). Here, the status quo is appropriately viewed as the pre-August 15, 2017 status, before the jersey barriers were installed, which was "the last uncontested status . . . preced[ing] the pending controversy." *Textron*, 836 F.3d at 10. Accordingly, Plaintiffs do not face a heightened burden.[9]

## IV. ANALYSIS

A.    Likelihood of Success on the Merits

Because Plaintiffs are *pro se*, the court reads their complaint liberally for purposes of determining their potential success on the merits. *See Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 13

---

[9] Even if this motion could be considered a request for a mandatory injunction, the court would reach the same conclusion in view of the significant risk of irreparable harm faced by Plaintiffs under the present circumstances. *See Braintree Labs.*, 622 F.3d at 41 (explaining that although mandatory preliminary injunctions should be granted only "when the exigencies of the situation demand such relief[,] . . . [n]evertheless, those exigencies should still be measured according to the same four-factor test, as [t]he focus must always be on prevention of injury by a proper order, not merely on preservation of the status quo" (internal quotation marks omitted)).

(1st Cir. 2004) ("[T]he fact that the plaintiff filed the complaint pro se militates in favor of a liberal reading."). In this regard, the court focuses on the complaint's "*factual* allegations," rather than its statement of the legal claims (or causes of action) supporting relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014); *see Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 219 (1st Cir. 2016) (explaining that although the plaintiff's complaint failed to "include a retaliation claim among its numbered causes of action," its factual "allegations clearly set out a prima facie case for retaliation, and, given [the plaintiff's] status as a pro se litigant, they are sufficient to state a retaliation claim"); *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997) ("The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled.").

The court construes Plaintiffs' complaint as asserting at least three separate claims, or legal theories, supporting their asserted right to use the blocked road: (1) Plaintiffs obtained expressly reserved easements derived from deeds dating back to 1840; (2) the blocked road is part of a public way; and (3) Plaintiffs obtained a prescriptive easement, due to their use of the road for over 30 years. Addressing the last claim first, the court finds Plaintiffs have shown a substantial likelihood of success on the merits.

"An easement by prescription is acquired by the (1) continuous and uninterrupted, (2) open and notorious, and (3) adverse use of another's land (4) for a period of not less than twenty years." *White v. Hartigan*, 982 N.E.2d 1115, 1126 (Mass. 2013); *see* Mass. Gen. Laws ch. 260, § 21; *see also Carmel*, 487 N.E.2d at 870 (discussing difference between public and private prescriptive easements); 14C Mass. Prac., Summary Of Basic Law § 14:83 (5th ed.) ("An easement by prescription is similar to the doctrine of adverse possession, the difference being that in adverse possession the claimant occupies and possesses another's land adversely and thereby acquires title to it, whereas with an easement by prescription the claimant only uses another's land adversely so as to acquire an

easement in it."). Plaintiff has presented evidence demonstrating that they have used the blocked road continuously for around 30 years (in its present location), in a sufficiently open and notorious manner, under the belief that they had a right to do so. *See White*, 982 N.E.2d at 1130-31 (discussing elements of prescriptive easement). Moreover, Defendant had not factually controverted Plaintiffs' showing of continuous use (or any other element). *See Denardo v. Stanton*, 906 N.E.2d 1024, 1028 (Mass. App. Ct. 2009) ("[W]herever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish title by prescription and to authorize the presumption of a grant unless controlled or explained." (quoting *Truc v. Field*, 169 N.E. 428, 430 (Mass. 1930)). Accordingly, Plaintiffs have adequately demonstrated, for present purposes, a substantial likelihood of success on the merits of a claim for a private prescriptive easement.

Plaintiffs also have substantial support for their contention that Old Wood Road, including the blocked portion, is a public way. In fact, the 1986 Massachusetts Appeals Court decision in *Carmel v. Baillargeon*, 487 N.E.2d 867, holds that Old Wood Road, from Plaintiffs property going south (including the section that "becomes Thomas Road and then Carrington Road"), is a public way, such that "[a]butters of Old Wood Road are entitled to use it for all purposes for which a public way may be used." *Id.* at 869-70. The court explained that "[t]here was no vote of the town of Huntington to discontinue Old Wood Road," and "[o]nce duly laid out, a public way continues to be such until legally discontinued." *Id.* at 869. As a result, the court explained, Plaintiffs' "cutting and trimming of tress which obstructed the way did not constitute a trespass upon, or waste of," the property. *Id.* at 870. Granted, the blocked section of the road at issue here was apparently moved by Defendant's predecessor from the west side of the rail road track to the east side. However, dicta in *Carmel v. Baillargeon* suggests this (relatively) new location of the road became a public way, upon its alteration, and the old location was automatically discontinued as a public way. *See id.* at 869 n. 8.

Moreover, while Plaintiffs have presented evidence indicating the Town of Huntington discontinued maintenance of the relevant portions of Old Wood Road, there is no suggestion in the record that the municipality formally voted to discontinue it as a public way. *See Nylander v. Potter*, 667 N.E.2d 244, 246 n.7 (Mass. 1996) ("A legal discontinuance, by town vote, of a road as a public way is to be distinguished from a discontinuance of maintenance under G.L. c. 82, § 32A (1994 ed.). A discontinuance of maintenance under G.L. c. 82, § 32A, merely relieves a municipality of liability for care and maintenance of the road. It, unlike a formal discontinuance by town vote, does not extinguish the right of the public, and abutting landowners, to travel over the road."). At the very least, the court finds, Plaintiffs have "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation," thereby justifying a preliminary injunction in light of the severe hardship faced Plaintiffs. *Hamilton Watch Co.*, 206 F.2d at 740; *see also Patch*, 167 F.3d at 26-27.

These showings, combined with Plaintiffs' *pro se* status, serious risk of irreparable harm, and minimal harm flowing to Defendant, are sufficient to justify a narrow injunction in order to protect Plaintiffs from further injury pending a final determination of "the rights of the parties." *Trump*, 137 S. Ct. at 2087 (2017).[10]

B.    Irreparable Harm

Plaintiffs have made a compelling showing as to the substantial risk of irreparable harm they face in the event the jersey barriers remain in place, especially given the lack of timely access by emergency responders and Plaintiff Lori Baillargeon's two alleged heart attacks suffered since Defendant installed the barriers. Again, Defendant has not factually disputed Plaintiffs' assertions of such ongoing harm. While Defendant contends Plaintiffs have adequate alternative access through

---

[10] Given the court's conclusion that Plaintiffs have adequately demonstrated a likelihood of success on the merits as to these two legal theories, the court does not address their first claim (easements through deeds) and expresses no opinion as to the viability of such a theory.

the northern section of Old Wood Road, Plaintiffs have presented sufficient evidence demonstrating the difficulty of using this access, especially during certain parts of the year. Most importantly, Plaintiffs have shown, through letters written by their fuel delivery company, community ambulance association, and local fire department, that larger vehicles cannot access their residence through this northern access at any time of the year.

Defendant also argues that Plaintiffs waited over two years to file this action and delayed further before filing their preliminary injunction motion, undermining their assertions of irreparable harm. Defendant is correct that Plaintiffs waited a significant amount of time before filing their complaint and filing this motion, and normally such a long delay on its own can justify withholding injunctive relief for lack of irreparable harm. *See, e.g., Health New England, Inc. v. Trinity Health - New England, Inc.,* 2016 WL 4925780, at \*4 (D. Mass. Sept. 14, 2016). Under these unique circumstances, however, this one factor does not tip the balance in favor of Defendant on the irreparable harm prong. *See, e.g., Cuviello v. City of Vallejo*, 944 F.3d 816, 833-34 (9th Cir. 2019). As discussed, Plaintiffs are *pro se* and thus are entitled to some leniency on procedural matters. *Nunnally,* 996 F.2d at 6. In this regard, it is not surprising "that a pro se litigant might take more time than would a lawyer to build his case before moving for relief," as "[o]btaining injunctive relief from a federal court is not an easy task, even for a skilled attorney." *Cuviello*, 944 F.3d at 833. Moreover, Plaintiffs have an explanation for their delay; they spent a great deal of time both trying to convince Defendant to remove the barriers through other means (including via local and state officials) and researching historical deeds. *See Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 244-45 (D.D.C. 2014) ("In light of plaintiffs' diligent pursuit of a variety of avenues . . . , plaintiffs' 'delay' does not give rise to an inference that the harm is not irreparable and imminent.").

C.      Balance of Hardships

As to the relative balance of the hardships between the parties, given Plaintiffs' usage of the

now-blocked road without apparent incident for the prior thirty years, the court finds Defendant's

arguments as to any harm it would suffer by the re-opening of this road are entitled to little weight.

To be clear, the court is not granting Plaintiffs all the relief they request. That is, Plaintiffs have not

made adequate showings, either as to the likelihood of success on the merits or irreparable harm,

justifying their request for an order requiring Defendant to construct a new crossing over the

railroad track or complete improvements to the blocked road (lowering its grade and widening it).

*See, e.g., Shapiro v. Burton*, 502 N.E.2d 545, 548 (Mass. App. Ct. 1987) ("The duty of maintaining an

easement in such condition and repair as may be necessary to its exercise normally rests upon the

holder of the easement."). Moreover, Plaintiffs represented at the hearing that they can no longer

use their gravel permit. Given this representation, the dearth of information as to Plaintiffs' other

business ventures on the property, and the likely increased intensity of such additional business

usage, the court will limit the injunction to permit only residential usage, rather than any business

usage, by Plaintiffs. *Cf. Carmel*, 487 N.E.2d at 870 (discussing limitations of Old Wood Road

northern access easement). As to Defendant's concerns regarding safety and liability issues, the court

is confident such matters can be resolved by the parties through a written agreement, court-

sponsored mediation, or resolution by the undersigned if necessary. After all, Defendant concedes

the parties previously engaged in discussions regarding a formal written agreement memorializing

the terms of Plaintiffs' use of the disputed road, and Plaintiffs have indicated a willingness to engage

in mediation.

On the other side of the scale, Plaintiffs face immeasurable harm each day these barriers

remain in place, in light of the lack of standard emergency vehicle access and Lori Baillargeon's

apparent heart condition.

D.    Public Interest

      Lastly, the court finds it is in the public interest to permit residents to use an access road they (and others) have used openly and continuously for thirty years. It is particularly important, from a public interest standpoint, to allow emergency services quick and easy access to Plaintiffs' residence in case of an emergency.[11] The public interest also supports access to reliable fuel delivery, rather than unsafe and expensive personal transportation of diesel fuel.

V. Conclusion

      For these reasons, the court ALLOWS IN PART Plaintiffs' motion for preliminary injunction (Dkt. No. 29) as follows:

      (1) Defendant is hereby ORDERED to remove (or cause to be removed) the six jersey barriers blocking the subject road no later than 2:00 p.m. on Wednesday, June 3, 2020.

      (2) Defendant is ENJOINED from interfering with Plaintiffs' reasonable use of this road for residential, fuel delivery, and emergency service purposes during the pendency of this action or until further order of this court.

      (3) Plaintiffs shall not use this road for their own business purposes, including gravel hauling, during the pendency of this action or until further order of this court.

      (4) The parties shall immediately confer with the goal of reaching an agreement as to reasonable terms and conditions regarding Plaintiffs' use of the road. If the parties cannot resolve any significant disagreements, they shall report to the court by 5:00 p.m. Monday, June 1, 2020 whether the parties agree to engage in court-sponsored mediation or instead wish to have the undersigned resolve the matter.

      (5) Plaintiffs (unless the parties reach a contrary agreement) are responsible for maintenance of this road, taking into consideration any reasonable safety conditions proposed by Defendant.

  It is So Ordered.

                                   _/s/ Mark G. Mastroianni_____

                                   MARK G. MASTROIANNI

                                   United States District Judge

---

[11] This is especially true during the current and foreseeable public health crisis, which is already straining the public health system.