UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID PAUL BAILLARGEON and ) <br> LORI ANN BAILLARGEON, ) <br>     Plaintiffs ) <br> ) <br> v. ) <br> ) <br> CSX TRANSPORTATION, INC. ) <br>     Defendant. ) | Civil Case No. 3:19-30135-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO
COMPEL PRODUCTION OF PLAINTIFFS' TAX RETURNS
(Dkt. No. 154)

ROBERTSON, U.S.M.J.

I. Introduction

Plaintiffs David Paul Baillargeon and Lori Ann Baillargeon ("Plaintiffs") bring claims against the defendant, CSX Transportation, Inc. ("CSXT" or "Defendant") for monetary damages and injunctive relief declaring that they have a right to access their property in Huntington by means of an unpaved roadway that runs parallel to CSXT railroad tracks. Non-expert discovery is complete; the court ruled on the parties' cross-motions for summary judgment (Dkt. No. 135); expert disclosures related to damages are in progress with Plaintiff's disclosures having been made (Dkt. No. 149; Dkt. No. 163-1); and trial is scheduled commencing on August 16, 2022 (Dkt. No. 149). Now before the court is Defendant's motion to compel Plaintiffs to produce copies of their tax returns for the years 2014 to the present on the grounds that the tax returns are relevant to Plaintiffs' alleged damages (Dkt. No. 155). For the reasons set forth below, Defendant's motion is granted. Plaintiff will produce copies of their federal tax returns from 2014 through the present for each year in which they have filed a federal

1

tax return. These documents will be produced to Defendant by email or mail no later than April 20, 2022.

II.     Relevant Factual and Procedural Background

According to the complaint, on or around August 15, 2017, Plaintiffs received a no trespass order from CSXT, and, on August 17, 2017, CXST placed concrete barriers on an access road that Plaintiffs had used for 37 years (Dkt. No. 1 at 5). CXST claims that this unpaved access road lies wholly within its operating railroad right-of-way and in close proximity to active railroad tracks, that Plaintiffs are not entitled to use it for access to their property, and that its use by Plaintiffs causes undue safety risks (e.g., Dkt. No. 155 at 1).

Plaintiffs filed their action on October 7, 2019 (Dkt. No. 1). On May 29, 2020, the presiding District Judge allowed Plaintiffs' motion for a preliminary injunction in part, granting them the right of reasonable use the access road for residential, fuel delivery, and emergency service purposes but not for business purposes (Dkt. No. 60). On February 9, 2021, at Defendant's assented-to request, the court modified the existing scheduling order, revising the deadlines for briefing on the parties' anticipated cross-motions for summary judgment, and deferring completion of expert discovery related to damages until after the summary judgment motions on liability had been filed (Dkt. No. 108). On September 3, 2021, the court denied Plaintiffs' summary judgment motion and granted in part and denied in part Defendant's summary judgment motion (Dkt. No. 135). On October 5, 2021, after the parties reported reaching an impasse in attempts at resolution, the presiding District Judge returned the case to the undersigned to establish a schedule for expert discovery and address any related discovery matters (Dkt. No. 140).

On motion by Plaintiffs, the deadline for their expert disclosures was extended to March 31, 2022 (Dkt. Nos. 147, 149).  On March 31, 2022, Plaintiffs disclosed experts related to their claimed losses stemming from the 2018 expiration of a so-called grandfathered permit to mine gravel from their property, and the lack of access, attributable to Defendant's barrier, to the gravel on their property (Dkt. No. 163-1).  Plaintiffs claim they are entitled to recover the value of the gravel on their property that they have not been able to, and according to them, will not be able to, extract and sell (Dkt. No. 158 at 2-3).  Their estimate of their loss, and their corresponding claim for damages, is, to say the least, substantial (Dkt. No. 158 at 3).

On September 22, 2020, Defendant served its second set of document production requests on Plaintiffs, requesting production of, among other things, "[a]ll federal income tax returns filed by you or on your behalf from 1986 to the present, including all related schedules or forms reflecting income from operation of a gravel business, campground, auction, or fish farm on your Property" (Dkt. No. 156-1 at 4).  Plaintiffs objected to producing their tax returns, and did not do so, on the grounds that they were suing Defendant about their future business losses, "not money [they] made or did not make in the past," that they should not have to show or prove their past income to Defendant because it was not relevant, and that their tax returns were private and confidential (Dkt. No. 156-2 at 3).

Plaintiffs have produced some documents showing receipts from past gravel sales, but, according to Defendant, Plaintiffs admit that that they "'have some receipts from certain years, but not all.'"  Defendant represents that this production of documents contains large gaps, stating that there are documents from January 1983 through June 2017, but more than twenty years in that timeframe for which there are no records at all evidencing gravel sales by Plaintiffs.  Further, according to Defendant, some of invoices for gravel that Plaintiffs have produced show

the amount of gravel sold, but not how much Plaintiffs charged for the gravel, and that this deficiency exists as to all of the documents from 2017 (Dkt. No. 155 at 4).

In an effort to resolve the discovery dispute, Defendant has limited its request to Plaintiffs' federal tax returns (including related schedules) from 2014 through the present (Dkt. No. 155 at 12). Plaintiffs maintain their previously stated objections in their opposition to Defendant's motion to compel and add that Defendant's motion is untimely (Dkt. No. 157).

### III. Discussion

#### A. General Legal Principles

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …. Information within this scope of discovery need not be admissible in evidence to be discoverable." The proportionality provision was added to Fed. R. Civ. P. 26 (b)(1) in December 2015 to emphasize that there are intended to be limits on the breadth of discovery to which a party is entitled. *See, e.g., Fed. Energy Regulatory Comm'n v. Silkman*, No. 1:16-cv-00205-JAW, 2017 WL 6597510, at *6-7 (D. Me. Dec. 26, 2017). Nonetheless, "[a]s a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996)). "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or

4

may be in the case." *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015) (quoting *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)). The party seeking information in discovery has the burden of showing its relevance. *See, e.g., Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016) (citing *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005)); *see also Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984). Conversely, "[w]hen a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'" *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (quoting *Sánchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)); *see also Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1. "It is well-settled in the First Circuit that 'income tax returns are discoverable where the returns are relevant to claims of the parties and the information is not readily available in another form.'" *Viscito v. Nat'l Planning Corp.*, Civil Case No. 3:18-30132-MGM, 2019 WL 5318228, at *3 (D. Mass. Oct. 21, 2019) (quoting *Bourne v. Arruda*, Civil No. 10-cv-393-LM, 2012 WL 1107694, at *3 (D.N.H. Apr. 2, 2012)). These criteria are satisfied in this case.

1. Plaintiffs' past income from gravel sales is relevant.

Plaintiff's theory of damages is that they are entitled to recover the value of all of the gravel on their property – a value which they calculate at $121,635,955.00 – because they could not use the disputed access road for business purposes, including gravel removal, after Defendant blocked their access to the road in August 2017, and their gravel removal permit expired in 2018 while business use of the access road was not permitted (Dkt. No. 157 at 2-3). They argue that their historical income from gravel removal is not relevant to their theory of damages because

they are seeking recovery for damage to their property, and, for this reason, they should not be required to produce their tax returns. Plaintiffs are wrong.

Plaintiffs might have sought to show a diminution in the value of their property due to reduced or lost access as a measure of alleged damages, but their expert disclosures do not address this theory of recovery, nor do they address it in the memorandum they submitted in opposition to Defendant's motion to compel. Instead, they are seeking to recover what they say is the amount they could expect to realize if they sold all of the gravel they estimate is present on their property at five dollars per yard, which they say is the current wholesale price for gravel. While it may not be quite accurate to say that they are seeking to recover future lost profits because it is not clear that the five dollar per yard price takes into account an offset for costs such as, for example, extraction or transportation, still, Plaintiffs' method of computing their losses demonstrates that they are seeking to recover damages equivalent to future sales they claim they cannot make because Defendant barred access to their property and their permit expired: "[B]ecause of [Defendant's] actions, we can no longer get the cake [i.e., gravel] out of the box [i.e., the land]" (Dkt. No. 158 at 5). *See Packgen v. Berry Plastics Corp.*, 46 F. Supp. 3d 92, 112 (D. Me. 2014) (explaining that the plaintiff sought to recover for sales not made, or, in other words, sought the present value of its lost profits), *aff'd* 847 F.3d 80 (1st Cir. 2017).

The First Circuit has stated that "'[i]t is … common practice to estimate lost future profits by examining profits earned in the comparable past.'" *Packgen*, 847 F.3d at 89 (alteration in original) (quoting *Atlas Truck Leasing, Inc. v. First NH Banks, Inc.*, 808 F.2d 902, 904 (1st Cir. 1987)). Plaintiffs may disagree with CXST's defense to their claim for damages, but reviewing income derived from past sales is a well-established and valid basis for challenging the amount of Plaintiffs' claimed damages based on lost future sales and profits. Lost profits may be

recovered only when they can be established by reliable evidence. *Urico v. Parnell Oil Co.*, 708 F.2d 852, 856 (1st Cir. 1983); *Spring Investor Servs., Inc. v. Carrington Capital Mgmt., LLC*, Civil Action No. 10-10166-FDS, 2013 WL 1703890, at *15 (D. Mass. Apr. 18, 2013) ("The party seeking to recover lost profits bears the burden of proving … that the amount of loss is 'capable of ascertainment by reference to … established experience or direct inference from known circumstances.'" (second alteration in original) (quoting *John Hetherington & Sons, Ltd. v. William Firth Co.*, 95 N.E. 961, 964 (Mass. 1911)). Evidence which tends to undermine Plaintiffs' liability theory and the extent of their alleged loss is relevant. *Perez v. Hyundai Motor Co.*, 440 F. Supp. 2d 57, 61 (D.P.R. 2006) (citing *Perez-Velasco v. Suzuki Motor Co. Ltd.*, 266 F. Supp. 2d 266 (D.P.R. 2003); *Vazquez Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 11-12 (D.P.R. 1997)).

> 2. Plaintiffs' tax returns are not privileged and the information CSXT seeks is not available from another source.

Where the information in a plaintiff's tax returns is relevant to damages, personal tax returns are discoverable. *See Amoah v. McKinney*, CIVIL ACTION NO. 4:14-40181-TSH, 2016 WL 1698267, at *4 (D. Mass. Apr. 27, 2016) (citing *Madrid v. Don Kelly Constr., Inc.*, No. 12 CIV 12-0451 JB/GBW, 2013 WL 1897826, at *7 (D.N.M. pr. 24, 2103)). The party resisting the disclosure of tax returns, here, Plaintiffs, "'bear[] the burden of establishing alternative sources for the information.'" *Elevate Grp., LLC v. DataScience.codes, LLC*, Civil Action No. 1:20-12084-PBS, 2021 WL 6108288, at *3 (D. Mass. Nov. 23, 2021) (quoting *Buntzman v. Springfield Redevelopment Auth.*, 146 F.R.D. 20, 32 (D. Mass. 1993) (citation omitted)). Plaintiffs have not shown that historical information about their income and profits from gravel sales is available from another source. To the contrary, CSXT has persuasively demonstrated that Plaintiffs' production of other records related to their income and profit from gravel sales is

incomplete and inadequate, as are records Defendant obtained from a third party (Dkt. No. 155 at 10). Indeed, Plaintiffs concede their lack of records showing their past gravel sales (Dkt. No. 157 at 3-4). Moreover, in seeking production of Plaintiffs' tax returns, CSXT has demonstrated its good faith by limiting its request to the years 2014 to the present. CSXT has satisfied the criteria for obtaining discovery of Plaintiffs' federal tax returns for the years 2014 to the present. *See Viscito*, 2019 WL 5318228, at *3. To the extent Plaintiffs are concerned about privacy as to the contents of their tax returns, CSXT is ordered to take reasonable steps to protect the confidentiality of Plaintiffs' financial and personal identifying information in their tax returns.

    3.   CSXT's motion is timely.

CSXT timely served its request for Plaintiffs' tax returns (Dkt. No. 156-1 at 4, 7). After hearing from the parties, on the basis that the parties were engaged in efforts to resolve the dispute in advance of trial and to conserve the parties' resources in the event that evidence about damages would not be required if the case was settled or resolved on summary judgment, the undersigned ordered that the parties could engage in further expert discovery related to damages after summary judgment motions addressing liability had been filed (Dkt. No. 108). Defendant's motion to compel production of Plaintiff's tax returns in connection with its obligation to make expert disclosures complies with the court's February 9, 2021, order and is, therefore, not untimely.

    IV.   <u>Conclusion</u>

For the foregoing reasons, defendant CSXT's motion to compel production of Plaintiffs' federal tax returns, including all schedules thereto, for the years 2014 to the present is granted. By no later than April 20, 2022, Plaintiffs will produce to Defendant complete copies of all federal tax returns they have filed for the years 2014 to the present. Defendant will take

reasonable steps to preserve the confidentiality of Plaintiffs' financial information and any personal identifying information in their tax returns.

It is so ordered.

Dated: April 13, 2022

Katherine A. Robertson
KATHERINE A. ROBERTSON
U.S. Magistrate Judge